IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

NANCY MORROW, *et al.*,

§
§
§

**Plaintiffs,**

§

**v.**

§     Civil Action No. 1:16-CV-00118-BL

§

**JONATHAN MEACHUM**, in his individual
capacity, and **EASTLAND COUNTY,
TEXAS**

§
§
§
§

§

**Defendants.**

§     Assigned to U.S. Magistrate Judge

## REPORT AND RECOMMENDATION ON DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT AND ORDER ON VARIOUS MOTIONS

Now before the court are Defendants' Motion for Summary Judgment (Doc. 15),

Defendants' Objections to Plaintiffs' Summary Judgment Evidence and Motion to Strike (Doc.

33), and Defendants' Motion for Leave to File Sur-Sureply and to Supplement Summary Judgment

Evidence (Doc. 39). Plaintiffs brought this action in their individual capacities, as an administrator

of the estate of Austin Moon, and on behalf of Moon's minor children following his death after he

collided with a vehicle driven by Jonathan Meachum, a law enforcement officer employed by

Eastland County. The complaint alleges Meachum—in his individual capacity—and Eastland

County violated Moon's rights under the Fourth and Fourteenth Amendments to the Constitution

of the United States. (Doc. 1, 7).

As these three motions are interrelated, the undersigned **DENIES** the Motion to Strike and

**GRANTS** the Motion for Leave to File before providing a report and recommendation on the

Motion for Summary Judgment. No order is entered or recommendation made as to the parties'

Agreed Motion to Extend Discovery (Doc. 45), as the undersigned will address that motion in an

order opening discovery if necessary after resolution of the motion for summary judgment. The

parties have adequately briefed the qualified immunity issues in the Motion for Summary Judgment (Docs. 16; 22; 34; 35-2). As the parties have not unanimously consented to the jurisdiction of the United States Magistrate Judge, the court makes this report and recommendation on the Motion for Summary Judgment to the Senior United States District Judge.

## I. MOTION FOR LEAVE TO FILE

Defendants filed for leave to respond to a sur-reply filed by Plaintiffs after obtaining leave of this court. (Doc. 39). This motion is in the main unopposed, except as to whether Defendants may also submit an affidavit of cell phone records indicating the duration and timing of cell phone calls which Plaintiffs had requested during their discovery process. (Doc. 39, 2). As the contents of the proposed reply and affidavit are either unopposed or material and relevant, this Court **GRANTS** Defendant's Motion for Leave to File Sur-Surreply and to Supplement Summary Judgment Evidence (Doc. 39) and deems the Sur-Surreply and Supplemental Index (Doc. 40) properly filed.

## II. MOTION TO STRIKE

Defendants also move to strike evidence offered by an expert for the Plaintiffs, Curtis Painter, alleging it contains "no admissible opinion evidence that could defeat Defendants' motion" for summary judgment. (Doc. 33, 13). An expert may offer testimony on scientific or other specialized topics if it will help the factfinder weigh the evidence or determine a fact at issue if the expert's testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied those principles and methods reliably to the particulars of the case. *See* Fed. R. Evid. 702. As with other evidence, the admissibility of expert testimony is determined by its relevance and reliability. *See Pipitone v. Biomatrix, Inc.*, 288

F.3d 239, 244 (5th Cir. 2002) (citing *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

Expert evidence is relevant if it helps the factfinder understand the other evidence in the case or determine a material fact because the reasoning and methodology of the expert can be properly applied to the facts of a case. *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 591. If an expert's opinion is not relevant, the Court should exclude that opinion. *See* Fed. R. Evid. 402; *Daubert*, 509 U.S. at 591. The proponent of expert testimony must show by a preponderance of the evidence that the testimony offered is reliable. *See Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). In weighing reliability, the Court considers the extent to which the theory used by the expert has been or can be tested, whether the theory has been subject to peer review and publication, the potential rate of error, and whether the technique and theory are generally accepted as valid by the relevant scientific community. *See Daubert*, 509 U.S. at 592-94. The Court can also consider if the expert's opinion is the result of an impermissible leap from the data. *See General Elec. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

Defendants argue Plaintiffs have not met their burden of showing the reliability of Painter's evidence. However, as explained below, this motion for summary judgment should be decided on the basis of a question of law, not fact. The evidence offered by Painter is not relevant to this question of law, and so this Court **DENIES** the motion to strike as moot, without prejudice to a later similar filing from Defendants if appropriate at a later stage.

## III. MOTION FOR SUMMARY JUDGMENT

### A. Uncontested Facts

Meachum is an Investigator for the 91st Criminal District Attorney in Eastland County, Texas, and was patrolling I-20 near Cisco, Texas in a marked law enforcement SUV on the afternoon of June 26, 2014. Meachum determined a motorcycle behind him in traffic was driving in excess of the posted speed limit by roughly 10 MPH, and turned his emergency lights on to initiate a traffic stop of Moon, the motorcycle driver. Instead of stopping, Moon accelerated past Meachum and out of his sight. Meachum contacted other law enforcement personnel in the area to advise them he was pursuing a motorcycle fleeing the attempted traffic stop.[1]

After escaping Meachum's sight, Moon stopped for gas at the intersection of I-20 and US-183 in Cisco, where Eastland County Deputy Sheriff Ben Yarbrough recognized his small blue and white motorcycle from the description provided by Meachum. Cisco Police Officer Jarrett Turner was in the same area. After Yarbrough pulled into the gas station, Moon sped out from behind the pumps, heading south on Highway 183. At this point, Meachum was ahead of Moon who was also heading south on Highway 183.[2] Further down the highway, Meachum saw Moon in his rear view mirror and moved partway into the oncoming traffic lane to impede Moon from passing him on the left. Moon ran into the rear driver's side of Meachum's SUV, and was later pronounced dead at the scene of the collision.

---

[1] Although Defendants' briefs do not mention Meachum contacting anyone by radio at this point, their answer to the initial complaint and Meachum's deposition testimony do. (Docs. 1, 2; 26-1, 52-53).

[2] The parties dispute the interpretation of evidence from depositions and discovery, with Plaintiffs alleging Meachum knew Moon was behind him traveling south, and Defendants claiming Meachum believed Yarbrough was chasing Moon down in front of him. This dispute is discussed below.

**B. Applicable Legal Standard**

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 65(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment." *Kellough v. Bertrand*, 22 F.Supp.2d 602, 606 (S.D. Tex. 1998) (citing *Anderson*, 477 U.S. at 247-48).

"Although the court consider[s] the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the nonmoving party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000) (quoting *Rushing v. Kansas City Southern Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999), *cert. denied* 528 U.S. 1160 (2000)); *accord Celotex*, 477 U.S. at 324 (the non-movant must identify specific evidence in the record and show how it presents a genuine issue of material fact for trial); *Cass v. City of Abilene*, 2016 WL 737077 (5th Cir. Feb 24, 2016) (*per curiam*) ("[T]o avoid summary judgment, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial.") (quoting *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007)).

"[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Furthermore, the Court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

### C. Discussion

#### a. Qualified Immunity

Defendants argue that any claims against Meachum individually are foreclosed by qualified immunity. (Doc. 16, 15). When a defendant claims qualified immunity, the plaintiff must demonstrate the inapplicability of the defense. *Club Retro, L.L.C., v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). To meet this burden, a plaintiff must satisfy a two-prong test: first, by claiming the defendant committed a constitutional violation under current law; and second, by claiming the defendant's actions were "objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id.*

In a bold header in the initial complaint, Plaintiffs claim "Defendants' Actions Constituted an Excessive Force and Unlawful Seizure" and cite to the Fourth and Fourteenth Amendments to the U.S. Constitution, as well as 42 U.S.C. § 1983, which provides for liability for constitutional violations. (Doc. 1, 7). The complaint then asserts "Meachum's use of force was clearly excessive to the need, objectively unreasonable in light of clearly established law, and directly caused the death of Austin Moon. Therefore, Meachum's actions violated Austin Moon's Fourth and Fourteenth Amendment rights to be free from unlawful seizure." *Id.* In resolving a qualified

immunity question, "the first inquiry must be whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

A Fourth Amendment claim of excessive force in effecting a seizure is analyzed using a reasonableness standard which "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). This reasonableness inquiry in the first prong is distinct from determining under the second prong whether the putatively immune defendant's actions were unreasonable under clearly established law. *See Lytle v. Bexar County, Tex.* 560 F.3d 404, 410 (5th Cir. 2009) (citing *Saucier*, 533 U.S. at 210).

The reasonableness question in the first prong regards the prudence of the defendant's actions in effecting the seizure, and in the second prong regards whether the defendant was acting within the bounds of clearly established law. So in deliberating on the first prong, the court must balance "the facts and circumstances of [the] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight[,]" judge reasonableness objectively "from the perspective of a reasonable officer on the scene" rather than through hindsight, and account for the limited time to make these decisions at the time. *Graham*, 490 U.S. at 396-97.

This is a high bar in car chase cases: "[t]he [Supreme] Court has thus never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone to be a basis for denying qualified immunity." *Mullenix v. Luna*, 136 S. Ct. 305, 310 (2015). However, while there is

> no constitutional violation when an officer's conduct, even viewed in the light most favorable to the plaintiff, falls into that category of conduct that is reasonable as a matter of law[,] … in those cases where the officer's conduct is less clear and assessment of reasonableness mandates a number of factual inferences, the case falls within the province of a jury.

*Lytle*, 560 F.3d at 411. When there are disputed factual questions about the reasonableness of an officer's actions in using deadly force to effect a seizure, a conclusion that there was no constitutional violation is premature. *See Mullenix*, 136 S.Ct. at 311 (discussing *Lytle*, 560 F.3d 404); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007). Here, Plaintiffs plainly assert factual questions about the reasonableness of Meachum's behavior sufficient to find they have plead a Fourth Amendment violation for excessive force in effecting the seizure. Specifically, the Plaintiffs raise fact questions about the circumstances of the case and what Meachum would have seen when making his rapid decision and maneuvering his vehicle. However, it is less clear that they have done so up to the standard required at the summary judgment stage.

In responding to a defense of qualified immunity raised in a motion for summary judgment, Plaintiffs are required to "counter the movant's affidavits with specific facts showing the existence of genuine issues warranting a trial." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(c)). The recitation of facts alleged in a complaint, standing alone, is insufficient to satisfy this burden. *Goodson*, 202 F.3d at 735. So it is useful to consider whether the Plaintiffs have met their burden through the framework of the factors from *Graham*—severity of the crime, threat to officers and others, and whether he is evading or resisting arrest—while taking care to fairly consider only what Meachum knew at that time and the time he had to make any decisions. 490 U.S. at 396-97.

As to the severity of the crime, Meachum attempted to initiate a traffic stop of Moon for exceeding the posted speed limit by roughly 10 miles per hour on the interstate. Defendants' own

brief characterizes the speeding before the attempted stop as not severe and a "routine traffic incident[.]" (Doc. 34, 11). Subsequent traffic violations were certainly more severe than speeding by 10 miles per hour, but in determining the reasonableness of Meachum's actions, they are more properly considered in evaluating the threat Moon posed to the pursuing officers and other highway traffic.

Immediately upon cresting the hill, Meachum describes seeing two vehicles in the oncoming traffic lane and felt Moon posed a threat to their safety if he attempted to pass on the left. Although multiple viewings of his dashboard camera at slow speeds might lead one to believe those oncoming vehicles were pulled over and stopped on their shoulder—presumably in response to Meachum's flashing lights—it is far from clear Meachum could have determined that was the case in the seconds available while also paying attention to Moon behind him.

Speaking only of the seconds before the collision with Moon, Defendants state Meachum crested a hill, and decided to discontinue a pursuit of Moon when he did not see any evidence of the pursuit in front of him. (Doc. 16, 19). However, the pertinent question is whether the facts, as alleged by the Plaintiffs, are sufficient to create a triable fact question as to reasonableness. Plaintiffs allege Meachum acted unreasonably by cresting a hill, dramatically decreasing speed, and maneuvering into a position Moon could not have expected. Plaintiffs describe the events before the collision as follows:

> … Meachum spotted Moon in his rearview mirror. Meachum "always had [a] visual of Austin Moon" as he was "consistently" … in his rearview mirror. He knew Moon was behind him, and that he would disappear from Moon's vision as he crested over a slight hill. Moon likely could see Meachum ahead of him in the same southbound lane, travelling with lights activated. Just as he approached the top of a hill, well aware Moon was behind him, Meachum quickly took his foot off the gas, decelerating. As Meachum crested the hill, and drove down the backside—where his Tahoe could no longer be seen by Moon—he applied … his brakes, so that he decelerated from 100… to 45 miles-per-hour in the nine seconds before

impact .... When Moon reached the top of the hill, he braked upon seeing the now slow moving Tahoe. ... In addition to slowing his motorcycle by applying his brakes, Moon attempted to maneuver around Meachum by crossing into the northbound lane .... As Moon approached the Tahoe while traveling in the northbound lane, Meachum continued to slow the Tahoe under heavy braking. ... Approximately 6 seconds before impact, Meachum beg[an] a series of right and left swerving maneuvers similar to those a NASCAR driver might employ in anticipation of the need to block a closely following competitor attempting a pass. Less than two seconds before impact[,] the Tahoe moves hard [to the] left and crosses the center line, followed by a slight rightward correction and then a final hard left, ... followed almost immediately by the crash.

(Doc. 23, 12-14) (internal citations omitted). Plaintiffs also highlight where Meachum described his intent to create a "rolling block" in front of Moon. (Doc. 16, 45). So, according to Plaintiffs, Meachum knew Moon was following him at great speed, then—out of sight of Moon—maneuvered and slowed his vehicle, responding to Moon's movements and attempting to stop him from passing in any direction.[3]

Unlike *Scott*, this is not a case where the video evidence directly contradicts the story told by a plaintiff of unreasonable actions by an officer. Video from Meachum's dashboard camera does indicate he crested the hill while slowing his vehicle and maneuvering in a manner consistent with both interpretations. However, except for the outside knowledge that Moon was on a motorcycle behind Meachum and collided with the SUV, the video provides no information about

---

[3] For completeness' sake, Defendants assert Meachum "noticed the motorcycle in his rear view mirror rapidly coming up on him. ... If the motorcycle decided to pass [Meachum] on the left (in the oncoming lane), Moon would endanger the lives of the motorists traveling northbound .... Meachum was also concerned that additional traffic could turn onto US 183 ..., and those vehicles could also be at risk of collision with the motorcycle. ... While he continued driving southbound and slowed to the speed of 56 mph, he moved his vehicle so that the left rear was approximately 1.8 feet over the center stripe in the roadway ... to discourage the motorcycle from trying to pass him on the left and to direct [it] to the right .... Meachum thought this movement would also help to encourage the drivers of those northbound vehicles to slow down and move over onto their improved shoulder .... When Meachum moved his vehicle slightly over the center stripe, the motorcycle was completely in the southbound lane on US 183. Meachum never saw the motorcycle move over the center line of US 183. ... Because Meachum began braking before he reached the crest of the hill and had been braking for several seconds, he believed the motorcycle had plenty of opportunity to see that Meachum was braking, and should have had more than enough time to slow or stop behind Meachum. Meachum never saw the motorcycle move to pass him on the left. Instead, the next thing Meachum knew he felt the impact of the motorcycle striking his vehicle." (Doc. 16, 19-20).

Moon's location at any point, or when Meachum noticed Moon and how closely he was observing Moon's movements. The main question, then, is if Meachum's actions would have been unreasonable if they occurred exactly as Plaintiffs allege: he intentionally moved to surprise Moon and cause a collision. It is not obvious that doing so would be *per se* unreasonable, as the Supreme Court has never determined an officer was unreasonable in utilizing force to end a chase. Without an outer boundary set to judge reasonable behavior against, the determination about the reasonableness of Meachum's actions is necessarily highly fact-dependent.

In attempting to counter the Defendants' affidavits, the Plaintiffs dispute whether there is evidence that Meachum actually knew, should have known, or could have known that he was ahead of Moon as Moon headed south out of Cisco. Plaintiffs highlight where Deputy Yarbrough testified at a deposition that he heard Officer Turner and Investigator Meachum discussing Meachum's position (Doc. 26-3, 94) but in a later affidavit testified no such discussion took place and he had confused and conflated various phone and radio conversations when making this incorrect statement, but that he reviewed "all available audio recordings of this event" and that "[n]one of those recordings contained any radio exchange between Investigator Meachum and Officer Turner." (Doc. 17-1, 34).

Further confusing this issue is a statement by Yarbrough made after he encountered Moon at the gas station. Yarbrough mistakenly identified the gas station as a "West-T-Go" over the radio instead of an Allsup's, causing Meachum to misunderstand Yarbrough's report instead as placing Moon in front of him near the "county road" heading south on US 183. This ultimately has little bearing on whether Meachum unreasonably exerted force in seizing Moon, except that his surprise at seeing Moon behind him almost immediately after reportedly giving up on finding him in front of him may have impacted his decisionmaking or the time he had to make those decisions.

Ultimately, the reasonableness of Meachum's decision to slow dramatically and maneuver partway into the northbound lane rests on whether he was reasonable in believing Moon posed a danger to others nearby, or was instead intentionally aiming to cause a collision with Moon. Although the evidence offered by Defendants is now internally consistent and seems a reasonable interpretation of the available evidence, Plaintiffs have raised sufficient factual questions fit for trial to determine whether Meachum acted reasonably in seizing Moon.

However, this reasonableness question under the first prong is mooted if Meachum's behavior was not contrary to clearly established law at the time of the incident. As noted earlier, courts are loath to deny qualified immunity based upon an officer's actions in using even deadly force to terminate a high-speed traffic encounter they believe endangers officers and bystanders. To succeed in overcoming qualified immunity, Plaintiffs must show both that Meachum acted unreasonably in effecting the seizure and that Meachum could not have reasonably believed his actions were within the bounds of clearly established law. The clearly established law at the time of the collision on US 183 was that if an officer perceived an imminent danger to themselves, other law enforcement officials, or bystanders posed by a person operating a vehicle at high speed, they were permitted to use deadly force to terminate the operation of that motor vehicle. *See Scott*, 550 U.S. at 386 ("A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death."); *see also Plumhoff v. Rickard*, 134 S. Ct. 2012 (2014); *Mullenix v. Luna*, 136 S. Ct. 305 (2015); *Thompson v. Mercer*, 762 F.3d 433 (5th Cir. 2014).

In attempting to show Meachum could not have reasonably believed the use of his vehicle as a block was justifiable under this clearly established law, Plaintiffs point to cases characterizing

roadblocks as clearly prohibited (Doc. 23, 29) (citing *Brower v. County of Inyo*, 489 U.S. 593 (1989); *Jamieson v. Shaw*, 772 F.2d 1205 (5th Cir. 1985); and *Buckner v. Kilgore*, 36 F.3d 536 (6th Cir. 1994)) and alternatively to "a consensus of cases of persuasive authority" establishing intentional collision with a motorcyclist as a Fourth Amendment violation. (Doc. 23, 29-30) (citing *Walker v. Davis*, 649 F.3d 502 (6th Cir. 2011); *Donovan v. City of Milwaukee*, 17 F.3d 944 (7th Cir. 1994); *Wilkins v. Edwards*, Civ. No. 6:14-cv-00907, 2015 WL 6470466 (D. Ore. Oct. 26, 2015); and *Buckner*, 36 F.3d 536). *Brower*, *Jamieson*, and *Buckner* all detail law enforcement officials stationing police vehicles perpendicular to travel lanes, and it is not clear they are analogous to the instant case, where Meachum was generally oriented in the normal direction for travel on the highway and was inside and operating the vehicle at the time of the collision.[4] Furthermore, the Supreme Court later established an explicit rule on this point in *Scott*: "A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." 550 U.S. at 386. An argument that clearly established law prohibited roadblocks at the time of the collision on US 183 is without merit.

Perhaps knowing this, Plaintiffs also argue a "consensus of cases of persuasive authority" establishes a different rule for when the motorist is on a motorcycle. To show this consensus, Plaintiffs point to four cases. The first, and most factually similar to the instant case, is *Walker*. 649 F.3d 502. In *Walker*, the Sixth Circuit affirmed a district court's judgment that "there were no bystanders nearby that were at risk of [the decedent]'s reckless conduct" and cited to Sixth Circuit

---

[4] The facts in *Brower* and *Jamieson* indicate the vehicles were parked and stationed past the crest of a hill and spotlights were used to ensure a crash with the parked vehicular roadblocks, while the facts in *Buckner* were disputed—the officer in *Buckner* positioned his vehicle perpendicular to the lanes either a few seconds prior to the collision, or with sufficient time to exit the vehicle, attempt to wave the motorcyclists down with a flashlight and flashing police vehicle lights, then re-enter the vehicle and maneuver it out of its perpendicular position in an unsuccessful attempt to avoid the imminent collision.

precedent establishing "that a suspect fleeing in a car that has never posed a danger to anyone has the clearly established right not to be seized with deadly force." 643 F.Supp.2d 921, 931-32 (W.D. KY 2009) (citing *Smith v. Cupp*, 430 F.3d 766, 777 (6th Cir. 2005)). Here, the motorcyclist was on a highway, cresting a hill, and there were other motorists nearby on the road. Although there may be some dispute about the level of danger to those other drivers on the highway, it is certainly not fair to claim Moon "never posed a danger to anyone[,]" and that Meachum therefore violated the clearly established right the Sixth Circuit has found in prior cases. *Cupp*, 430 F.3d at 777.

The other cases Plaintiffs believe clearly establish a consensus about the use of force against motorcyclists are similarly non-instructive. In *Wilkens*, the officer did bump a motorcycle at three to five miles per hour—in violation of local department policy—when it stopped on the shoulder following a roughly three-minute long chase, but also leveled his weapon and kicked the motorcycle driver. 2015 WL 6470466 at *2. The court found "a reasonable officer would have understood that such intentional actions, particularly the ramming of a motorcycle under the circumstances, was unlawful at the time of the incident." *Id.* at fn. 7. Here, Meachum did not come up behind Moon's motorcycle stopped on the shoulder. Furthermore, the *Wilkins* decision issued roughly sixteen months after the instant collision on US 183, meaning it cannot have helped to establish a consensus Meachum would have known about in June 2014.

In *Donovan*, the Seventh Circuit did offer some reasoning as to why motorcycles might be treated differently from cars when evaluating reasonableness, but also found that the law was not clearly established at the time it was decided in 1994 and therefore the defendant officer was protected by qualified immunity. 17 F.3d 944, 952-53. This leaves *Buckner*, where Plaintiffs point to language that states "an officer violates a clearly established right under *Brower* if he pulls his squad car onto a highway with knowledge or reason to know that an approaching motorcyclist will

-14-

not have time or the ability to stop or otherwise safely avoid collision with the car." (Doc. 23, 30) (quoting *Buckner*, 36 F.3d at 540). Although Plaintiffs allege Meachum did intentionally maneuver his vehicle so that Moon would strike it, the factual distinctions from *Buckner*—where the vehicle was parked perpendicular to the direction of travel—mean the clearly established right found by the Sixth Circuit in that case is not implicated here.

Although the Fifth Circuit has found the "decision in *Scott* did not declare open season on suspects fleeing in motor vehicles[,]" it remains Plaintiffs' burden to show Meachum's actions were in violation of clearly established law on the day of the collision. *Lytle*, 560 F.3d at 415. Plaintiffs' burden in overcoming Meachum's defense of qualified immunity at the summary judgment stage is twofold: they must show unreasonableness in both prongs of the qualified immunity test, and must do so by countering the Defendants' affidavits with specific fact questions fit for trial. Even if there were sufficient factual questions raised to create a triable question as to whether Meachum violated the Fourth Amendment, Plaintiffs have not shown Meachum violated either controlling authority or a robust consensus of persuasive precedent such that his invocation of qualified immunity should be abrogated.

### b. Liability of Eastland County

Defendants argue that if all Plaintiffs' claims against Meachum are dismissed on the grounds of qualified immunity, then the claims against Eastland County are terminated as a matter of law. To maintain an action under § 1983 against Eastland County, Plaintiffs need to show "that an official policy or custom was a cause in fact of the deprivation of rights ...." *Spiller v. City of Texas City Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997) (internal quotations and citations omitted). The Fifth Circuit has set out the test for showing such an official policy as requiring Plaintiffs to show

> A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or … a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (*per curiam*).

The complaint specifically alleges Eastland County failed to properly train officers on the dangers of forcibly stopping motorcycles, and that it was deliberately indifferent to this danger and therefore itself "liable for violating Austin Moon's Fourth and Fourteenth Amendment rights under the U.S. Constitution." (Doc. 1, 7-8). Plaintiffs also allege a failure to train Meachum on safe police pursuits subjects Eastland County to § 1983 liability. (Doc. 23, 34).

Plaintiffs claim that they have not yet been able to fully complete the discovery which would allow them to prove up the elements for their claims against Eastland County. Per the scheduling order of this court, discovery is to close August 14, 2017 and dispositive motions not based upon qualified immunity must be filed by September 15, 2017. As above, to the extent Eastland County moves for summary judgment based upon qualified immunity in this motion, the Court recommends the motion be denied, as Plaintiffs allege causes of action against Eastland County that do not merge with the claims against Meachum which might be proved sufficient to defeat a motion for summary judgment after the discovery process. To the extent Eastland County requests summary judgment on those independent claims, the undersigned recommends the motion be denied as premature without prejudice to another filing subject to the deadlines in the pre-trial scheduling order or as they may be amended by this court.

## IV. CONCLUSION

For the reasons above, the undersigned **GRANTS** the motion for leave to file (Doc. 39), **DENIES** as moot the motion to strike (Doc. 33), and **RECOMMENDS** the motion for summary judgment (Doc. 15) be granted as to claims against Meachum on the grounds of qualified immunity and denied as premature as to claims against independent claims against Eastland County.

**IT IS ORDERED** that this case is reassigned to the docket of Senior United States District Judge Sam R. Cummings. After this reassignment, the undersigned may continue to exercise all powers permitted by 28 U.S.C. § 636(b) unless otherwise directed by Judge Cummings.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. See Douglass v. United Servs. Automobile Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED**.

Dated June 22, 2017.

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**

-17-